IN RE the MARRIAGE OF:

Jennifer HENDRICK, Petitioner-Respondent,

v.

Garry M. HENDRICK, Respondent-Respondent,

Christopher L. SKARZYNSKI, Intervenor-Appellant.†
[Case No. 2008AP722.]

IN RE the PATERNITY OF B.N.H.:

STATE of Wisconsin and Jennifer Hendrick,
Co-Petitioners-Respondents,

v.

Christopher L. SKARZYNSKI,Respondent-Appellant.†
[Case No. 2008AP723.]

Court of Appeals

*Nos. 2008AP722, 2008AP723. Submitted on briefs
January 6, 2009.—Decided February 10, 2009.*

2009 WI App 33

(Also reported in 765 N.W.2d 865.)

† Petition to review denied 5/12/09.

480

On behalf of the respondent-appellant and intervenor-appellant, the cause was submitted on the briefs of *Korey C. Lundin* and *Jessica Roulette* of *Legal Action of Wisconsin, Inc.*, Milwaukee.

On behalf of the petitioner-respondent and respondent-respondent, the cause was submitted on the briefs of *Gregory A. Kotsonis* of *von BRIESEN & ROPER, S.C.*, Milwaukee and *Kristela L. Cervera*, Department of Child Support Enforcement, Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. We have consolidated the following two cases on appeal: *State v. Skarzynski*, 2008AP723, a paternity action instituted by the State of Wisconsin against Christopher L. Skarzynski, and *Hendrick v. Hendrick*, 2008AP722, an action started by Jennifer Hendrick seeking a divorce from Garry M. Hendrick.[1] For ease of analysis, we address the two appeals separately, discussing the appeal in -723 first.

---

[1] The paternity and divorce actions were previously consolidated by the circuit court.

## I. Paternity Action.

¶ 2. Skarzynski appeals a judgment that directed him as the biological father of Mrs. Hendrick's daughter to pay $64 per month in child support and one-half of the costs of genetic testing. Following receipt of the test results, which, according to the laboratory report, showed that "the probability" that Skarzynski was the girl's father was "99.99%, as compared to an untested, unrelated man of the Caucasian population," he admitted that he was her father. He contends, however, that he should be relieved of that acknowledgment and of the support order because the girl's mother, Jennifer A. Hendrick, was married to Garry M. Hendrick when the girl was born. He asserts that he is entitled to this relief under the statutory presumption that a child born to a married couple is the husband's biological child, and that the Hendricks are estopped to argue otherwise. The circuit court rejected this argument; so do we.

¶ 3. Skarzynski also contends that the circuit court should not have appointed the lawyer who was appointed in the divorce action as guardian *ad litem* for Mrs. Hendrick's two children, as guardian *ad litem* for Mrs. Hendrick's daughter in the paternity action. He contends that the guardian *ad litem* had a conflict. We agree with the circuit court that the appointment was proper.

¶ 4. The facts in this case are not disputed. Accordingly, our review is *de novo. See Randy A.J. v. Norma I.J.,* 2004 WI 41, ¶¶ 12, 21, 270 Wis. 2d 384, 392–393, 399, 677 N.W.2d 630, 635, 638 (interpretation of paternity statutes is subject to *de novo* appellate review); *Badger III Ltd. P'ship v. Howard, Needles, Tammen & Bergendoff,* 196 Wis. 2d 891, 902, 539 N.W.2d 904, 909 (Ct. App. 1995).

¶ 5. Garry and Jennifer Hendrick were married in early September of 1999. Mrs. Hendrick's daughter was born in late January of 2000. Before Mrs. Hendrick started her divorce action against Mr. Hendrick, appeal number -722, which, as we see below, is still pending, Mr. Hendrick had himself, the girl, and the couple's other child tested to see if he was their biological father; he was not.[2] No one contends that Skarzynski is the father of the girl's sibling.

¶ 6. The State started this paternity action and, as noted, Skarzynski has admitted that he is the girl's biological father, and he was so adjudicated. He contends, however, that the circuit court should not have ordered that he be tested genetically to see if he was the girl's father because of the presumption in WIS. STAT. § 891.41(1)(a). Section 891.41 provides, as material here:

(1) A man is presumed to be the natural father of a child if any of the following applies:

(a) He and the child's natural mother are or have been married to each other and the child is conceived or born after marriage and before the granting of a decree of legal separation, annulment or divorce between the parties.

. . . .

(2) In a legal action or proceeding, a presumption under sub. (1) is rebutted by results of a genetic test, as defined in s. 767.001 (1m), that show that a man other than the man presumed to be the father under sub. (1) is not excluded as the father of the child and that the statistical probability of the man's parentage is 99.0% or higher, even if the man presumed to be the father

---

[2] The other child is not part of the appeal in the paternity case because no one contends that either Skarzynski or Mr. Hendrick is that child's biological father.

under sub. (1) is unavailable to submit to genetic tests, as defined in s. 767.001 (1m).

Thus, this presumption is rebuttable. In ordering the testing, the circuit court rejected Skarzynski's argument that he should not be potentially responsible (he had not yet been tested) for Mrs. Hendrick's daughter because the Hendricks were married when she was born, opining that the testing would be in the girl's best interests. The circuit court ordered the results of the testing sealed, however, pending Skarzynski's seeking leave to appeal the order. We denied leave, and, subsequently, the circuit court ordered the test results unsealed. Skarzynski then acknowledged his paternity.

¶ 7. As the circuit court recognized, the focus of a proceeding seeking to determine a child's paternity is whether the "best interests" of the child would be served thereby. *Cf. Racine Family Court Comm'r v. M.E.*, 165 Wis. 2d 530, 536, 478 N.W.2d 21, 23 (Ct. App. 1991) ("The best interests of the child is the primary consideration in custody determinations for both divorce actions and paternity actions."); *see also Randy A.J.*, 2004 WI 41, ¶ 25, 270 Wis. 2d at 401, 677 N.W.2d at 639. Thus, WIS. STAT. § 767.855 provides:

> Except as provided in s. 767.863 (1m), at any time in an action to establish the paternity of a child, upon the motion of a party or guardian ad litem, the court or supplemental court commissioner under s. 757.675 (2) (g) may, with respect to a male, refuse to order genetic tests, if genetic tests have not yet been taken, and dismiss the action if the court or supplemental court commissioner determines that a judicial determination

485

of whether the male is the father of the child is not in the best interest of the child.[3]

(Footnote added.)

■

¶ 8. In determining that it was in Mrs. Hendrick's daughter's best interests to order genetic testing, and, later to unseal the results, the circuit court accepted the uncontradicted assertions that Mr. Hendrick had essentially abandoned her and the other child, and that the girl knew that. The circuit court also observed that it was important for Mrs. Hendrick's daughter to know who her father was, noting that she would for all practical purposes be "fatherless" unless a putative biological father was tested, the test results received, and someone's paternity established. The circuit court also heard from the guardian *ad litem,* who further noted that it is important for children to know who their biological parents are "for medical reasons."

¶ 9. Skarzynski argues that the circuit court erred in ordering that he be tested and by ordering the test results unsealed. He points to WIS. STAT. § 767.855 in support, contending that the circuit court never held an evidentiary hearing to ascertain Mrs. Hendrick's daughter's best interests. There are three flaws in his contentions.

---

[3] WISCONSIN STAT. § 767.863(1m) reads:

In an action to establish the paternity of a child who was born to a woman while she was married, if a male other than the woman's husband alleges that he, not the husband, is the child's father, a party may allege that a judicial determination that a male other than the husband is the father is not in the best interest of the child. If the court or a supplemental court commissioner under s. 757.675 (2) (g) determines that a judicial determination of whether a male other than the husband is the father is not in the best interest of the child, no genetic tests may be ordered and the action shall be dismissed.

¶ 10. First, Skarzynski never requested an evidentiary hearing on the girl's best interests either before the circuit court ordered the testing or before it ordered the test results unsealed. *See State v. Conway,* 34 Wis. 2d 76, 82–83, 148 N.W.2d 721, 724 (1967) (matters not presented to circuit court are waived). Further, Skarzynski does not tell us what such a hearing would have shown, either in contradiction of what the circuit court opined, or in support of his contention that the testing was not in the girl's best interests. Indeed, his brief on appeal tells us that "[a]ll parties agree to the essential facts."

¶ 11. Second, Skarzynski's reliance on WIS. STAT. § 767.855 is misplaced because, as we have seen, the circuit court *did* determine that ordering Skarzynski to be tested *was* in Mrs. Hendrick's daughter's best interests.

¶ 12. Third, under WIS. STAT. § 767.863(2), the circuit court had no discretion but to order the tests:

> If at the first appearance it appears from a sufficient petition or affidavit of the child's mother . . . that there is probable cause to believe that any of the males named has had sexual intercourse with the mother during a possible time of the child's conception, the court may, or upon the request of any party *shall,* order any of the named persons to submit to genetic tests.

(Emphasis added.)[4] We generally interpret the word "shall" in a statute as reflecting a mandatory legislative command, *see Watton v. Hegerty,* 2008 WI 74, ¶ 19 n.13,

---

[4] WISCONSIN STAT. § 767.863(2) reads in full:

If at the first appearance it appears from a sufficient petition or affidavit of the child's mother or an alleged father or from sworn testimony of the child's mother or an alleged father that there is probable cause to believe that any of the males named has had

311 Wis. 2d 52, 70 n.13, 751 N.W.2d 369, 378 n.13, and Skarzynski does not even address § 767.863(2), no less argue that "shall" means "may." Here, the State's petition attached an affidavit from Mrs. Hendrick asserting that she had sexual intercourse only with Skarzynski and Mr. Hendrick during the relevant conceptive period.

¶ 13. Despite all of this, Skarzynski argues that the doctrine of equitable estoppel bars this action, contending that Mr. and Mrs. Hendrick held themselves out as the girl's biological parents and that, accordingly, he was deprived of a chance to establish a relationship with the child. The latter contention is at odds, of course, with *his* efforts to avoid establishing a relationship with her now, but, more important, it misconstrues the doctrine.

¶ 14. "Equitable estoppel requires proof of three elements: (1) an action or an inaction that induces; (2) reliance by another; and (3) to his or her detriment." *Randy A.J.*, 2004 WI 41, ¶ 26, 270 Wis. 2d at 402, 677 N.W.2d at 639. As the circuit court astutely recognized, the only detriment that Skarzynski asserts is to *his financial interest,* not to the girl's interest. Stated another way, although by presenting themselves as her biological parents, the Hendricks might have induced Skarzynski's reliance on his escaping financial responsibility for a child he fathered, it did not induce reliance by the girl, whose best interests are the sole focus of this proceeding, to her detriment in a way that impos-

sexual intercourse with the mother during a possible time of the child's conception, the court may, or upon the request of any party shall, order any of the named persons to submit to genetic tests. The tests shall be conducted in accordance with s. 767.84. The court is not required to order a person who has undergone a genetic test under s. 49.225 to submit to another genetic test under this subsection unless a party requests additional tests under s. 767.84 (2).

ing estoppel to free Skarzynski from his parental obligations would remediate that detriment. First, as the circuit court observed without contradiction, the "Pandora's box" that held the secret of Mr. Hendrick's non-paternity has been opened—Skarzynski does not dispute that the girl is aware that Mr. Hendrick is not only not her father but also that he does not want to have anything to do with her. Second, Skarzynski does not explain how relieving him of his financial obligation to the girl would to any extent be in her best interests. The circuit court did not err in either ordering that Skarzynski be tested or in unsealing the test results.

¶ 15. Skarzynski also contends that the circuit court erred in appointing the guardian *ad litem* who represents both of Mrs. Hendrick's children in the divorce as the guardian *ad litem* for the girl in the paternity action. *See* Wis. Stat. § 891.39(1)(a) (appointment of "a guardian ad litem to appear for and represent the child whose paternity is questioned"). He asserts, without pointing out why, that the guardian *ad litem* had a conflict because of the dual appointment in the divorce matter, and relies on *Riemer v. Riemer*, 85 Wis. 2d 375, 270 N.W.2d 93 (Ct. App. 1978). On our *de novo* review, we agree with the circuit court that there was no conflict here.

¶ 16. *Riemer* concerned a guardian *ad litem* who was appointed for two children who had adverse interests:

> It is the interest of the older to be found the child of the parties so that his support and inheritance from the parties would be firmly established. It is also his interest that he be, if at all possible, the sole heir of the parties. These interests are in conflict with the interests of the younger child where a question is raised as to the paternity of the younger. If such paternity issue

489

is decided against paternity, the younger child would be disinherited. There being a patent conflict in the interests of the two minor children here involved, the guardian Ad litem appointed to represent one of them could not represent both.

*Id.*, 85 Wis. 2d at 380, 270 N.W.2d at 96. There is no such conflict here; the parties agree that neither of Mrs. Hendrick's children were fathered by Mr. Hendrick, and the parties also agree that Skarzynski is not the father of the girl's sibling. Accordingly, assuming that Skarzynski had standing to object to the appointment of the guardian *ad litem,* a matter that we do not decide, the appointment of the guardian *ad litem* to represent Mrs. Hendrick's daughter in the paternity action was proper; there is no conflict between her and her sibling in connection with Skarzynski's paternity.

¶ 17. We affirm the judgment entered in case number -723.

## II. Divorce Action.

¶ 18. The circuit court denied Skarzynski's motion to intervene in the Hendricks' divorce action, and Skarzynski contends that this was error. We disagree.

¶ 19. Skarzynski sought to intervene in the divorce action to prevent receipt in the divorce action of the test results showing that Mr. Hendrick was not the father of Mrs. Hendrick's daughter. He relies on WIS. STAT. RULE 803.09, which provides, as material:

(1) Except as provided in s. 20.931, upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposi-

tion of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

(2) Except as provided in s. 20.931, upon timely motion anyone may be permitted to intervene in an action when a movant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order or rule administered by a federal or state governmental officer or agency or upon any regulation, order, rule, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely motion may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

He argues that the circuit court should have either permitted mandatory intervention under RULE 803.09(1), a matter of law that we review *de novo, see Armada Broadcasting, Inc. v. Stirn,* 183 Wis. 2d 463, 470, 516 N.W.2d 357, 359 (1994), or permissive intervention under RULE 803.09(2), a matter that is within the circuit court's discretion, *see Helgeland v. Wisconsin Municipalities,* 2008 WI 9, ¶ 120, 307 Wis. 2d 1, 58, 745 N.W.2d 1, 29.

¶ 20. Subsection (1) requires that the person seeking to intervene in an action have "an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest." Subsection (2) similarly requires a nexus between the dispute and the interest of the proposed intervening party. These requirements are not met here.

491

¶ 21. As we have seen, Skarzynski has been adjudicated in the paternity action as the biological father of Mrs. Hendrick's daughter, and under WIS. STAT. § 891.41(2), the presumption that a child born during a marriage is the husband's child

> is rebutted by results of a genetic test . . . that show that a man other than the [husband] is not excluded as the father of the child and that the statistical probability of the man's parentage is 99.0% or higher, *even if the [husband] is unavailable to submit to genetic tests,* as defined in s. 767.001 (1m).

(Emphasis added.) The statute governing the determination of paternity therefore does not depend on whether the husband of the child's mother has or has not been genetically determined to be the child's father. Accordingly, it is immaterial to Skarzynski's interests whether the results of Mr. Hendrick's genetic tests are or are not received in the divorce action. As the circuit court observed, the paternity action is where Skarzynski's battle had to be fought; it was and Skarzynski lost.

¶ 22. We also agree with the circuit court's observation that under public policy—absent extraordinary circumstances that we cannot envision and that are not present here—the proper parties to a divorce action are the husband, wife, and the children of the marriage. Generally, third persons should not be able to interject themselves into a divorce to advance their own parochial interests.[5] This is precisely what Skarzynski sought to do—intervene to, as his lawyer told the circuit

---

[5] For example, *Troxel v. Granville,* 530 U.S. 57, 63–73 (2000) (plurality opinion), discusses the constitutional protections parents have in determining with whom and when their children

court, "continue on with his life as he has the last eight years." The circuit court properly rejected his attempt to avoid the obligations of fatherhood by muddying the waters of the Hendricks' divorce action.

¶ 23. We also affirm the order entered in case number -722.

*By the Court.*—Judgment and order affirmed.

may associate, and identifies significant hurdles a third party must overcome to interject him- or herself into an existing parental relationship.

In Wisconsin, the legislature has expressed similar reluctance to allow third parties to participate in family matters, including divorce proceedings. Thus, there are very limited circumstances when persons not parties to the marriage but who have a significant relationship with the child or the family, may participate or have notice of the proceedings. *See, e.g.,* WIS. STAT. § 767.43(3c) ("A grandparent requesting visitation under sub. (3) may file a petition to commence an independent action for visitation under this chapter or *may file a petition for visitation in an underlying action affecting the family under this chapter that affects the child.*) (emphasis added); WIS. STAT. § 767.217 (parties in "an action affecting the family in which either party is a recipient of benefits" must notify the agency providing the benefits of the filing of pleadings, motions, and notices of appeal).